**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tyrell Yazzie, | No. CV-24-01787-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Tyrell Yazzie ("Plaintiff") seeks this Court's review of the Social Security Administration ("SSA") Commissioner's (the "Commissioner") denial of his application for Supplemental Security Income ("SSI"). (Doc. 11 at 1). The Commissioner filed a Response (Doc. 15), but Plaintiff has not filed a Reply and the time to do so has passed. (Doc. 5 at 2 (granting Plaintiff 14 days after the service of Defendant's Answer Brief to file a Reply Brief)). Upon review of the briefs and the Administrative Record (Docs. 8–10, "AR"), the Court will reverse and remand the ALJ's November 2, 2023, decision for the following reasons.

**I.   Background**

Plaintiff filed for SSI benefits and alleged a disability onset date of June 13, 2001. (AR at 15). The claim was initially denied and Plaintiff requested a hearing. (*Id.*) The Administrative Law Judge held a hearing and Plaintiff, his foster mother and a vocational expert ("VE") all testified. (*Id.*) The ALJ concluded that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act ("the Act"). (*Id.* at 38). To reach this

conclusion, the ALJ utilized a five-step process developed by the SSA for determining whether an individual is disabled.

### A. The ALJ's Five-Step Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step process[1] to determine whether a claimant is disabled for purposes of the Social Security Act ("the Act"):

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g). If the ALJ determines no such work is available, the claimant is disabled. *Id*. § 404.1520(a)(4)(v).

### B. Application of this Process by the ALJ

At the first and second steps of the five-step inquiry, the ALJ concluded that (1)

---

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*, 180 F.3d at 1098.

[2] A claimant's "residual functional capacity" is defined as their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

Plaintiff had not engaged in substantial gainful activity since November 20, 2020, the application date; and (2) Plaintiff has the following severe impairments: bilateral genu valgum deformity with left patellar dislocation, asthma, obstructive sleep apnea, obesity, fetal alcohol syndrome with borderline intellectual function and unspecified neurocognitive disorder, depressive disorder, and autism spectrum disorder. (AR at 18). The ALJ found that these impairments "have had more than a minimal effect on the claimant's ability to perform basic work activities as required by SSR 85-28." (*Id*.) The ALJ also noted the presence of other disorders, including: acute interstitial pancreatitis, cholelithiasis status-post cholecystectomy, tachycardia, hypertension, prediabetes, bilateral medial facet coalition, and seasonal allergic rhinitis. (*Id*.) The ALJ found, however, that "there is no evidence that these impairments resulted in either lasting sequelae or any work-related limitations." (*Id*.)

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*. at 20). Related to Plaintiff's social interaction limitation argument, the ALJ specifically found that in interacting with others, the claimant has a moderate limitation and stated that the evidence in the record is indicative of fair ability to independently, appropriately, and effectively cooperate with others, respond to criticism, or understand and respond to social cues on a sustained basis. (AR at 22).

At step four, the ALJ concluded that Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently operate foot controls bilaterally. The claimant can occasionally kneel, crouch, crawl, and climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. The claimant can have occasional concentrated exposure to non-weather-related extreme cold, non-weather-related extreme heat, and non-weatherrelated humidity. The claimant can have occasional concentrated exposure to pulmonary irritants, such as fumes, odors, dust, and gases, as well as poorly ventilated areas. The claimant can have occasional exposure

>to dangerous moving machinery and unprotected heights. He can perform work involving understanding, remembering, and carrying out simple instructions with simple work-related judgments. The claimant can perform work with no specific production rate, such as that found on an assembly line. He can perform work with occasional changes in a routine work setting. The claimant can perform work with minimal in-person interaction with the public, in which minimal is defined as 15 percent of an 8-hour workday. ***The claimant can perform work involving occasional interaction with coworkers, but involving no work in tandem or teams with others***.

(AR at 25) (emphasis added). To reach its RFC conclusion, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (*Id.*) He also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c." (*Id.*)

Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform. (AR at 37). The ALJ noted that it asked the VE "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (*Id.* at 37–38). The VE testified that the following occupations exist which Plaintiff would be able to perform:
- Cleaner, DOT 323.687-014, light, unskilled, SVP 2, 177,876 jobs nationally;
- Marker II, DOT 920.687-126, light, unskilled, SVP 2, 4,500 jobs nationally;
- Mail clerk, DOT 209.687-026, light, unskilled, SVP 2, 11,380 jobs nationally.

(*Id.* at 38). Based on this testimony, and considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*)

Based on this five-step evaluation process, the ALJ ultimately concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since November 20, 2020, the date the application was filed (20 CFR 416.920(g))." (*Id.* at 38). Now, the Court must determine whether the ALJ's decision was erroneous.

/ / /

- 4 -

II.  **Standard of Review**

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by "substantial evidence" or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. Substantial evidence is the type of evidence that would suffice, at trial, to avoid a directed verdict. *See Nat'l Labor Relations Bd. v. Columbian Enameling & Stamping Co*., 306 U.S. 292, 300 (1939).

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn*, 495 F.3d at 630. The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.* at 954 (citations omitted).

III.  **Discussion**

Plaintiff argues that (1) the ALJ improperly formulated the RFC regarding Plaintiff's social interaction difficulties by failing to account for limitations that were established by physicians whom the ALJ found persuasive, and whose opinions were credited; (2) the ALJ erred when evaluating the full extent of limitations caused by

Plaintiff's severe mental impairments; and (3) the ALJ relied on erroneous VE testimony in finding Plaintiff could perform work as mail clerk and marker II as these jobs are inconsistent with the Department of Transportation. (Doc. 11 at 3, 13 and 19). The Court will address each of Plaintiff's arguments in turn.

### A. Plaintiff's Social Interaction Difficulties

Plaintiff argues that, when determining the RFC for Plaintiff's ability to interact with coworkers and the public, the ALJ found the opinions of agency physicians persuasive, but failed to incorporate the full extent of the limitations established by the physicians. (Doc. 11 at 5–6). Plaintiff asserts that the ALJ found the opinions of agency physicians, L. Mogrovejo, PhD, R. Pereyra, PsyD, and Anna Titus, PhD, persuasive and that they restricted him to no more than "superficial' and "incidental" interaction. (*Id*. at 4). Yet, the ALJ failed to incorporate their recommended restrictions into its RFC conclusion. (*Id*.)

In assessing mental abilities specifically, the ALJ "must consider the nature and extent of the claimant's mental limitations and restrictions to determine the claimant's RFC 'for work activity on a regular and continuing basis.' " *Michele M. v. Saul*, 2020 WL 1450442, at *6 (S.D. Cal. Mar. 25, 2020) (quoting 20 C.F.R. §§ 404.1545(c), 416.945(c)). A claimant's "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [his or her] ability to do past work and other work." *Id*. The consideration of " 'the limiting effects of all impairments' does not necessarily require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work." *Id*. (quoting *Medlock v. Colvin*, 2016 WL 6137399, at *5 (C.D. Cal. 2016)).

The ALJ's decision noted that it considered the "findings of L. Mogrovejo, Ph.D., a State agency psychological consultant. After reviewing the available record, she found the claimant's mental impairments cause moderate limitations in interacting with others;

concentrating, persisting, or maintaining pace; and adapting or managing oneself with mild limits in understanding, remembering, or applying information." (AR at 34). Doctor Mogrovejo found Plaintiff should be "limited to simple one- and two-step tasks in a routine and predictable environment where changes can be easily explained, and interaction with others is superficial and occasional. He can complete tasks that do not require more than daily planning or independent prioritization of tasks." (*Id.*) The ALJ stated that "these findings are supported by Dr. Mogrovejo's review of the record and are generally consistent with the whole of the record, [and] are largely persuasive." (*Id.* at 35).

The ALJ also considered the findings of "R. Pereyra, Psy.D., [another] State agency psychological consultant. After reviewing the available record, Dr. Pereyra found the claimant's mental impairments cause moderate limitations in the 'paragraph B' criteria." (*Id.*) Dr. Pereyra found that Plaintiff is "limited to unskilled work of one-to[-two]-step tasks, where interpersonal contact is incidental to the work performed, complexity of tasks can be learned by ro[u]te and involves little judgment and few variables, and supervision is simple, direct, and concrete. He would benefit from well-defined work environments and specific goals." (*Id.*) The ALJ found that "these findings are the most persuasive, though the limitations found by Dr. Pereyra can be more specifically described. However, the undersigned finds that a restriction to one- to two-step work is overly restrictive and not persuasive, given his capabilities of driving, taking the bus, playing video games are consistent with the ability to follow and understand simple tasks." (*Id.*)

Finally, the ALJ addressed the findings of Doctor Anna Titus, Ph.D., yet another a State agency psychological consultant. (*Id.*) Dr. Titus concluded that Plaintiff's "mental impairments cause moderate limitations in the 'paragraph B' criteria, limiting the claimant to understanding, remembering, and carrying out one to two-step tasks in a work environment that is structured, predictable, with minimal changes, and with minimal social demands, where interaction with others is superficial and occasional." (*Id.*) She also "noted minimal psychological treatment and normal mental status examinations at recent treatment visits with no change to the claimant's previously reported activities of daily

living." (*Id*.)  The ALJ stated that Dr. Titus' findings "are also generally consistent with longitudinal medical evidence of record, but normal findings on basic assessments of cognitive function are suggest the restriction to one- to two-step work is excessive, while his generally cooperative demeanor and ability to respond appropriately to direct questions are indictive of minimal limitations interacting with supervisors." (*Id*. at 35–36).  The ALJ found that Dr. Titus' medical findings are "largely persuasive." (*Id*. at 36).

Related to these medical findings, the ALJ concluded in his RFC analysis that Plaintiff can "perform work involving understanding, remembering, and carrying out simple instructions with simple work-related judgments" as well as "perform work involving occasional interaction with coworkers, but involving no work in tandem or teams with others." (AR at 25).

Plaintiff's arguments regarding the ALJ's findings and conclusions present an interesting conundrum where it found Doctors Mogrovejo, Pereyra and Titus persuasive; yet, he found their suggested restriction, which all three reached, excessive. (*See id*. at 35–36).  Plaintiff argues that the ALJ established a social limitation in his RFC that far exceeded the parameters expressed by the physicians without explanation—which is inconsistent with his decision to credit their testimony. (Doc. 11 at 7).  The Commissioner asserts that the ALJ explained the evidence that she used to translate the prior administrative medical findings into the RFC, in the context of the evidence overall. (Doc. 15 at 8).

The ALJ simultaneously found that Dr. Pereyra's medical findings were "the most persuasive" while also finding that her suggested restrictions are overly restrictive. (AR at 35).  The ALJ's findings and conclusions create a catch-22 for Plaintiff where the ALJ has "credited" the medical opinions of Doctors Mogrovejo, Pereyra and Titus in name only while—in effect—rejecting part of their opinions. (*See id*.)

An ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each

doctor or other source" and "explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b)). The SSA regulations provide that the most important factors to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence." *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *Woods* makes clear that to properly reject a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* (quoting 20 C.F.R. § 404.1520c(b)).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id*.

Here, the ALJ did not explicitly reject the medical opinions of Doctors Mogrovejo, Pereyra and Titus—but stated that their recommended restrictions were excessive. (AR at 35–36). The ALJ reasoned that their restriction recommendations were "excessive" due to evidence such as Plaintiff's "generally cooperative demeanor and ability to respond appropriately to direct questions" as well as his "capabilities of driving, taking the bus, playing video games[.]" (*Id.*) This reasoning does not rise to the level of substantial evidence. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)

(stating that the ALJ "must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence"). In effect, the ALJ failed to do little more than criticize and reject the treating Doctors' suggested restriction without offering a substantive basis for his conclusion to do so. *See Garrison*, 759 F.3d at 1012–13. The ALJ partially rejected the medical opinions of Doctors Mogrovejo, Pereyra and Titus without discussing the supportability and consistency factors' in reaching his findings—which amounts to harmful error. *See Woods*, 32 F.4th at 792. Thus, the Court must reverse the ALJ's decision.

**B. Remand**

Plaintiff asks the Court to remand for benefits, or in the alternative, a new hearing. (Doc. 11 at 25). Once a court has determined an ALJ's decision contains harmful error, it maintains discretion to remand the case for additional proceedings or for an award of benefits. *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998) (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). This is "the proper course, except in rare circumstances[.]" *Treichler*, 775 F.3d at 1099. Conversely, under the "credit-as-true" rule, the court has discretion to remand for an award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted).

Here, the Court is reversing the ALJ's decision due to its failure to properly reject the suggested restriction of Doctors Mogrovejo, Pereyra and Titus. *See supra* Section III.A. Once this is completed, the ALJ will necessarily have to reconsider its evaluation of Plaintiff's claim for disability at Steps 4 and 5 of the five-step process. Thus, a remand for a new administrative hearing—rather than for benefits—would be appropriate here.

Accordingly,

**IT IS ORDERED** that the Administrative Law Judge's November 2, 2023, decision (AR at 15–38) is **reversed in part and remanded** to the Commissioner for further proceedings consistent with the Court's Order. The Clerk of Court is kindly directed to enter judgment in Plaintiff's favor and terminate this action.

Dated this 29th day of August, 2025.

Honorable Diane J. Humetewa
United States District Judge